J. D. Rogers, Appellant, v. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Appellee.

No. 41399.

June 24, 1932.

Burton Russell, for appellant.

Hughes, O'Brien & Faville and White & Clarke, for appellee.

Evans, J.—The accident in question occurred on March 8, 1930, in the town of Redfield and at the stockyards of the defendant, while the plaintiff was engaged with others in loading the upper deck of a double deck car for the transportation of sheep. For the purpose of such loading the floor of the chute in use was elevated to an approximate level with the floor of the upper deck of the car. For such purpose the floor of the chute was elevated by the use of certain counterweights, and such elevation was maintained by the use of a prop placed under the floor to support the same. In this case the process of loading was finished, and the parties engaged in the operation proceeded

to lower the floor of the chute to its normal level. For this purpose the floor was first slightly lifted, so as to release the pressure upon the prop, and the plaintiff herein proceeded to remove the prop. In his attempt to remove the prop he stooped under the chute floor for the purpose of grasping the prop and removing it. In this operation the prop in some way fell and struck the appellant in the face, whereby his eye was destroyed. The plaintiff, as a witness, described the accident as follows:

"The sheep were loaded on the upper deck all right. In removing the plank the platform was raised up a little. After taking away the approach and opening the gates I spoke to Mr. Fry. Mr. Fry raised the chute just a little. I reached under it to get this plank that held the chute up. When I went to reach under it to get the board the plank flew out and struck me in the left eye. I had to stoop over. I put my right hand forward to take hold of the plank. I did not get hold of the plank. When I reached under the floor of the chute to take hold of the plank with my right hand I was standing at the east side of the chute on the platform. Mr. Fry was on the west side of the chute. He was lifting the chute up a little bit. Mr. Fry raised up the platform and I was going to remove the plank and at that time when I bent down to get under the platform the plank struck my glasses. The end of the plank that had been up under the chute struck me."

Appellant's witness Fry described the same as follows:

"I remember of seeing a board fly up and hit Mr. Rogers in the eye as he stooped over. I saw him stoop over there on the east side of the chute. He said something about a board underneath the elevated part of it. I thought he pulled the board out partly and it tipped up and hit him."

Cross-examination.

"As I remember it, Mr. Rogers kind of pulled the board out and as he pulled the board up it bounced up and hit him. I think it was the end of the board to the west that I observed hit him. The balance of the board then would be extending to the east and would be partially off the platform. That is the way it looked to me."

Appellant's witness Maxwell described the same as follows:

"I lifted the platform enough to release the plank. Mr. Rogers took the plank out. and pushed it behind him or to the east. The platform was about waist high. When I lifted the floor of the chute to release the board Mr. Rogers ducked under the chute and took the plank out. I saw him stoop down. He took the plank out and got it pushed behind him and he then said: 'Hold it a minute, there is something else I want to get,' and I saw him stoop again. I could see the board pushed behind him. It would be the upper part of the board that was pulled from under the floor of the chute. I did not let the chute fall. The floor of the chute remained in about the same position. I did not let loose of it or push it or raise or lower it. It was not moved a half an inch."

Cross-examination.

"I raised the portion of the chute that was up especially to release the board. I saw Mr. Rogers stoop and pull the board out. I think a part of that board extended back of him and beyond the platform, to the east I mean. After that Mr. Rogers said, 'Hold it a minute, there is something under it,' and he stooped again. He stooped down a second time. It was after or at the same time he shoved the board back. I did not see the board strike him. The platform obstructed my view. As he released his hold on the board I saw the board move. Well, the board was in motion, kind of teetering around there, and was partially on the platform. The east end of the board is the only end I could see. During this time I was standing holding the platform up. The platform that I was holding did not move or drop or anything of that kind. Not perceptibly."

The negligence charged by the plaintiff against the defendant was the inadequacy of the device for supporting the floor of the chute. It appears that when the chute was originally constructed two uprights were placed, one on each side thereof, to which uprights hooks were attached, and a bar was provided to be placed underneath the chute floor and to rest its ends in said hooks. Plaintiff was the manager of a shipping association, and, as such, had done much loading and shipping from this point for the period of four years preceding. He had never used the bar or the hooks nor had he ever seen them used. The method adopted by him on the day of the accident was the same as he

had followed at all times during his service. We find it difficult to say that there was any evidence of negligence on the part of the defendant Railway Company which operated as the proximate cause of this accident. Passing that question it is clear that the accident resulted wholly from some act on the part of the plaintiff himself. Under his direction the floor was slightly raised for the purpose of releasing the prop. He necessarily knew that the prop would not stand after the weight had been lifted therefrom. The prop being released, the process of falling began. The plaintiff exposed himself to contact with the prop as it fell. The record does not clearly disclose the details of what happened. Sufficient to say that the prop used was of the plaintiff's own selection and that it fully served the purpose of such selection. The circumstance which was the immediate cause of plaintiff's injury was the release of the prop from under its load. Nothing more was requisite than to let it fall to the ground. The plaintiff was in the exclusive control of this circumstance. If negligence was perpetrated in the method of release, the plaintiff perpetrated it. If there was no negligence at this point, there was none anywhere. The prop, whether standing or falling, was not inherently dangerous. It is quite immaterial, therefore, whether the plaintiff was guilty of negligence or not. It is enough that the injury resulted from an act of plaintiff himself, and such act was not traceable to any proximate negligence of the defendant.

The judgment below is accordingly affirmed.—Affirmed.

WAGNER, C. J., and STEVENS, DE GRAFF, ALBERT, KINDIG, and MORLING, JJ., concur.

FAVILLE, J., took no part.